IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CECILIA A. KANIATOBE, as Personal Representative of the Estate of QUINTON ALEXANDER DAVILA, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. |
| (1) RANDY L. PICKENS, individually and in his official capacity as a DOC Correctional Officer; (2) OKLAHOMA DEPARTMENT OF CORRECTIONS, (3) THE GEO GROUP, INC.; | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | ATTORNEY'S LIEN CLAIMED JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, the Plaintiff, Cecilia A. Kaniatobe, as Personal Representative of the Estate of Quinton Alexander Davila, deceased, on behalf of Quinton Alexander Davila and all the beneficiaries named in Oklahoma's wrongful death statute, and for their causes of actions against these Defendants, alleges and states as follows:

### THE PARTIES

1. Plaintiff is Cecilia Ann Kaniatobe as the Personal Representative of the Estate of Quinton Alexander Davila, deceased, Comanche County Case Number PB-2024-147. Cecilia Kaniatobe is a resident of the State of Oklahoma, and this case concerns the death of Quinton Alexander Davila, who was a citizen of the United States and a resident

1

of Comanche County, Oklahoma when he died at the Lawton Correctional Facility on May 10, 2024. Prior to his death, Quinton Alexander Davila was serving a sentence in the custody of the Department of Corrections. As an inmate, he was entitled to the protections afforded by the Fourteenth Amendment of the United States Constitution.

2. At all times material herein, Defendant Randy Pickens ("Defendant Pickens") is a Correctional Officer who, upon information and belief, resides in Oklahoma. At all times material herein, Defendant Pickens was acting within his capacity as an employee or agent of the GEO Group, Inc. and/or the Oklahoma Department of Corrections and was responsible for providing correctional services to inmates confined at the Lawton Correctional Facility, including Quinton Alexander Davila. At all times relevant to this action, Defendant Pickens was acting under color of state law. Regardless of Defendant Pickens' place of residence, the allegations against this Defendant arise from his actions in Oklahoma and in this judicial district.

3. The Oklahoma Department of Corrections ("DOC") is a state agency, organized under the laws of the State of Oklahoma. The Oklahoma Department of Corrections is a "person" for purposes of 42 U.S.C. § 1983. At all relevant times, the Oklahoma Department of Corrections owned and operated the Lawton Correctional Facility. Oklahoma Department of Corrections was responsible for training and supervising prison employees; adopting, implementing, and enforcing prison policies; and for ensuring that the inmates in its custody received necessary protection, including

Quinton Alexander Davila, as required under the United States Constitution and other laws. Although the Department of Corrections sought to offload its prison correctional operations by contracting with The GEO Group, Inc., it remains liable for any negligence or unconstitutional policies or practices that resulting in harm to any person confined in the Lawton Correctional Facility.

4. The GEO Group, Inc. ("GEO Group") is a private, for-profit corporation based in Florida and doing business in Oklahoma. The GEO Group is considered a "person" for purposes of 42 U.S.C. § 1983. At all relevant times, GEO Group acted under the color of state law and pursuant to a contract with the Oklahoma Department of Corrections and/or the State of Oklahoma to provide necessary correctional services to inmates confined at the Lawton Correctional Facility. The GEO Group was responsible for adopting, implementing, and enforcing policies pertaining to the protection of inmates confined at the Lawton Correctional Facility. It was also responsible for ensuring that the protection provided to those inmates met the minimum constitutional standards and for ensuring that its staff and contractors were adequately trained to provide correctional services that met those standards.

**JURISDICTION AND VENUE**

5. This Court has original subject matter jurisdiction of Plaintiff's civil rights claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the actions present federal questions and involves the deprivation of civil rights arising under the United States

Constitution. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court under 28 U.S.C. § 1391, because the events, acts, and omissions complained of occurred in Comanche County, Oklahoma which is located within the Western District for the United States District Court of Oklahoma.

## FACTUAL ALLEGATIONS

Plaintiff incorporates all previous allegations and statements and further alleges the following:

### A. Facts Applicable to All Defendants

7. On May 10, 2024, Quinton Alexander Davila was serving a prison sentence and was an inmate in the custody of the Department of Corrections and was housed at the Lawton Correctional Facility in Lawton, Comanche County, Oklahoma.

8. At all times relevant herein, Mr. Davila was housed in Unit 4 within the Lawton Correctional Facility.

9. Unit 2C housed violent inmates associated with the gang, "Surenos 13," who have an established and well-known history of attacking other inmates in prisons.

10. Unit 4 inmates included some known members of a gang called "Central" that, by policy, required segregation from the opposing/rival Surenos 13 gang.

11. Defendant Pickens knew that Unit 2C and Unit 4 were required to be segregated, including being released for recreation at different times and in different yards.

4

12. At approximately 4:30pm on May 10, 2024, Sgt. Shelia Vaughn led Mr. Davila, along with approximately 61 other inmates of Unit 4, back indoors from outside recreation through the back of the Unit 3 / 4 West gymnasium. Sgt. Vaughn was the only correctional officer with the Unit 4 inmates.

13. Before Sgt. Vaughn could secure all Unit 4 inmates inside from recreation, Defendant Pickens released approximately 29 inmates from Unit 2C outside for recreation through the Unit 2 emergency exit, which was over 200 yards away from the Unit 3 / 4 West gymnasium.

14. The Unit 3 / 4 West gymnasium door is not visible from the Unit 2 emergency exit, located on the North end of the prison. The Unit 2C inmates could not see that Unit 4 inmates were still outside when they were released but immediately ran directly toward them upon being released.

15. Defendant Pickens did not establish communication with Sgt. Vaughn and receive confirmation that it was safe to release the Unit 2C inmates prior to releasing them for recreation. Sgt. Vaughn had just started to let Unit 4 inside the gymnasium and the majority of Unit 4 was still outside in the recreation area.

16. After Defendant Pickens released them, many of the Unit 2C inmates sprinted across the over 200-yard distance from the emergency exit of Unit 2C to the back of the Unit 3 / 4 West gymnasium and assaulted multiple inmates from Unit 4, including Mr. Davila.

17. Defendant Perkins failed to warn Sgt. Vaughn by radio of the impending attack so she could move to protect herself and the Unit 4 inmates. Defendant Perkins also failed to alert other correctional officers to the area of the attack so they could intervene and suppress or stop the attack.

18. The Unit 4 inmates, including Mr. Davila, were caught by surprise and ran into the Unit 3 / 4 West gymnasium while Sgt. Vaughn held the door open for them in effort to flee the attack. Sgt. Vaughn was also attacked by the Unit 2C inmates.

19. Mr. Davila managed to get inside the Unit 3 / 4 West gymnasium, but several Surenos 13 gang members cornered him and stabbed him repeatedly.

20. Other inmates tried banging on the windows in the gymnasium and pleading for other correctional officers in the hallway to help against the attack. The other correctional officers, whose identity are unknown at this time, did not intervene or provide assistance. Rather, after the attack went on for several minutes, the correctional officers opened the door to the gymnasium to throw OC spray grenades, which only served to blind the Unit 4 inmates and hindered them from being able to run away.

21. The inmates from Unit 2C used metal knifes / shivs to stab Mr. Davila. Prior to releasing inmates for recreation, each inmate is required to pass through a metal detector to prevent weapons from being available at recreation.

22. Defendant Pickens either failed to check Unit 2C inmates for weapons using the metal detector, or he knew the Unit 2C inmates had the weapons when he released them

for recreation while the Unit 4 inmates were still outside.

23. Defendant Pickens knew Unit 2C and Unit 4 were not permitted to be in the same area. Defendant Pickens knew, or should have known, inmates from Unit 4 were still outside and that it was not safe to release the Unit 2C inmates for recreation. Defendant Pickens knew, or should have known, to check Unit 2C inmates for weapons or use the metal detector prior to releasing them for recreation.

24. After the correctional officers obtained control over the gymnasium, Mr. Davila did not timely receive medical attention. Mr. Davila bled out from his injuries in the assault and was pronounced deceased at little after 5:00pm.

## FIRST CAUSE OF ACTION

### Violation of Quinton Alexander Davila's Eighth Amendment Constitutional Rights pursuant to 42 U.S.C. § 1983
### Against all Defendants

Plaintiff incorporates all previous allegations and statements and further alleges the following:

25. Defendant Perkins was employed by the Oklahoma Department of Corrections and/or the GEO Group as a Correctional Officer and was acting within the scope of his employment under color of state law.

26. Defendant GEO Group is charged with implementing policies for inmate safety and medical care at the Lawton Correctional Facility and has a responsibility to adequately hire, train, and supervise its employees, including Defendant Pickens, to ensure

inmates receive constitutionally adequate protection and medical services.

27.     The Eighth Amendment's cruel and unusual punishment clause "places restraints on prison officials, who ... must provide humane conditions of confinement; [they] must ... 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, (1984)). Prison officials must also "protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Prisoners are entitled to reasonable protection against attacks by other inmates. *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489 (10th Cir.1990).

28.     Defendant Perkins was deliberately indifferent to the health and safety of Mr. Davila by failing to confirm Unit 4 was inside before releasing Unit 2C for recreation; by failing to ensure Unit 2C inmates did not have weapons before being released for recreation, including failing to utilize the metal detector; by failing to release Unit 2C inmates in a controlled area so they would not have full access to the Unit 3 / 4 West gymnasium; by failing to warn Sgt. Vaughn via radio of the impending attack; and by failing to timely alert other correctional officers to the attack so they could intervene.

29.     Defendant Perkins had a knowledge of the need to protect inmates in Unit 4 by ensuring they were secured inside before releasing Unit 2C inmates, but Defendant Perkins had either an unwillingness to ensure that protection or deliberately allowed for the attack to happen.

30. Defendant Perkins had actual knowledge of the serious threat to the safety of Unit 4 inmates, including Mr. Davila, if exposed to the Surenos 13 gang members in Unit 2C, and he deliberately disregarded that threat.

31. Defendant GEO Group failed to adequately supervise Defendant Perkins to ensure Mr. Davila would be protected from known threats to his health and safety.

32. The willful or reckless failure to perform the foregoing duties and responsibilities constituted deliberate indifference to the safety and wellbeing of Mr. Davila in violation of his Eighth Amendment rights.

## SECOND CAUSE OF ACTION

**Violation of Quinton Alexander Davila's Eighth Amendment
Constitutional Rights pursuant to 42 U.S.C. § 1983
Against GEO Group and DOC**

Plaintiff incorporates all previous allegations and statements and further alleges the following:

33. Defendant GEO Group and/or Defendant Oklahoma Department of Corrections employed multiple members of the medical staff at Lawton Correctional Facility on May 10, 2024, whose identities are unknown at this time. These employees were working within their scope of employment on May 10, 2024, to provide medical services to inmates, including Mr. Davila.

34. Plaintiff was improperly denied medical treatment by employees of Defendant GEO Group and Defendant DOC.

35. Mr. Davila was stabbed multiple times. Mr. Davila, along with several other inmates in Unit 4, pleaded with correctional officers for help and for emergency medical treatment. Defendants were deliberately indifferent to Mr. Davila's serious medical need.

36. Defendants, and their employees, were objectively aware that Mr. Davila's medical condition was sufficiently serious as he and others screamed at them for help. Mr. Davila's injuries were so obvious even a lay person would recognize the need for immediate medical intervention.

37. Defendant GEO Group and Defendant DOC failed to properly train their employees regarding the Constitutional rights of individuals in need of medical treatment.

38. As a result of Defendants' unconstitutional policies, procedures, and/or customs and their failure to train employees, Mr. Davila was wrongfully and unlawfully denied timely medical treatment which exhibited deliberate indifference to a substantial risk of serious harm or death to Mr. Davila by Defendants' employees, who were acting within the course and scope of their employment with the Department of Corrections and GEO Group.

39. Defendants, and their employees, exhibited deliberate indifference because they ignored and disregarded the substantial risk of continual serious harm to Mr. Davila by not immediately seeking appropriate medical intervention for him while he pleaded for help and while he laid on the gymnasium floor bleeding to death.

40. Defendants, and their employees, pursuant to their own policies and

procedures, improperly and impermissibly denied and/or delayed providing Mr. Davila with the necessary and required medical care in violation of the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

41.     As a result of Defendants conduct, and their employees, Mr. Davila suffered physical pain, mental anguish, severe mental and emotional distress, and ultimately death.

42.     As a result of Defendants' reckless actions and callous indifference to the violation of Mr. Davila's civil rights, Mr. Davila should be awarded punitive damages.

## THIRD CAUSE OF ACTION

### Negligence
### Against Defendant Pickens

Plaintiff incorporates all previous allegations and statements and further alleges the following:

43.     Defendant Pickens owed a duty of care to protect Mr. Davila as an inmate in Defendant Pickens' care and custody at Lawton Correctional Facility. Defendant Pickens owed a duty to Mr. Davila to ensure Unit 4 inmates were returned inside from recreation prior to releasing Unit 2C inmates. Defendant Pickens owed a duty to Mr. Davila to ensure Unit 2C inmates did not have weapons before being released for recreation, including to utilize the metal detector. Defendant Pickens owed a duty to release Unit 2C inmates in a controlled area so they would not have full access to the Unit 3 / 4 West gymnasium. Defendant Pickens had a duty to warn Sgt. Vaughn via radio, and thereby also the inmates of Unit 4 who were in Sgt. Vaughn's supervision, of the impending attack. Defendant

11

Pickens owed a duty to timely alert other correctional officers to the attack so they could intervene and potentially prevent Mr. Davila's injuries and death.

44. Defendant Pickens breached each of these duties by failing to carry out and discharge each of the responsibilities listed above.

45. Defendant Pickens knew, or should have known, the Surenos 13 gang members in Unit 2C were violent and had weapons when released for recreation. Defendant Pickens knew, or should have known, Unit 4 was not safely returned indoors when he released the Unit 2C inmates for recreation. Defendant Pickens knew, or should have known, the Unit 2C inmates were running to attack other inmates, including Mr. Davila, when he failed to warn of the impending attack.

46. As a result of the breach of Mr. Pickens' duties, Mr. Davila was viciously attacked by the Surenos 13 gang members in Unit 2C and was stabbed repeatedly, ultimately resulting in his death.

47. As a result of Defendant Pickens' reckless actions and deliberate indifference to Mr. Davila's health and safety, Mr. Davila should be awarded punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence
### Against Defendants GEO Group and DOC

48. Defendants GEO Group and DOC, and their employees, owed a duty of care to provide medical services to Mr. Davila upon being notified of his injuries and immediate need for medical treatment.

49. Defendants GEO Group and DOC, and their employees, breached their duty by disregarding the obviousness of Mr. Davila's serious medical condition and by failing to timely render medical treatment to Mr. Davila when he was pleading for help and while he laid on the gymnasium floor bleeding to death. They knew, or should have known, that failure to render medical services would cause unnecessary pain and likely death.

50. As a result of Defendants' failure to render medical assistance, Mr. Davila succumbed to his injuries and bled to death.

51. As a result of Defendants', and their employees', reckless actions and deliberate indifference to Mr. Davila's health and safety, Mr. Davila should be awarded punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** because of the deliberate and reckless actions of Defendants, which can only be described as extreme and outrageous, Mr. Davila died. Plaintiff is entitled to damages under Oklahoma's Wrongful Death statute, 12 O.S. § 1053, *et. seq.*, demands judgment against all Defendants in the form of burial expenses, economic loss, grief, anxiety, mental pain, and anguish, loss of consortium, and the loss of anticipated services suffered by Plaintiff. Plaintiff demands judgment in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) as to each cause of action, attorney's fees, costs, statutory interest until the date judgment is paid, punitive damages, and for such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

s/ Thomas A. Stone
Thomas A. Stone, OBA No. 34802
John P. Cannon, OBA No. 30033
CANNON & ASSOCIATES, PLLC
401 N. Hudson Ave.
Oklahoma City, OK 73102
Telephone: (405) 657-2323
Facsimile: (405) 657-2413
E-mail: thomas@jpcannonlawfirm.com
       john@jpcannonlawfirm.com
*Attorneys for Plaintiff*